UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

DAMIEN VAZQUEZ,                                    Civil Action

                              Plaintiff,           04 CV 4189 (GEL/DF)

              v.                                   ECF CASE

SEAN COMBS a/k/a P. DIDDY, individually, BAD BOY   **COMPLAINT and**
ENTERPRISE, INC., THE CITY OF NEW YORK,            **JURY DEMAND**
and GLORIA FRAZIER, as an individual,

                              Defendants.

-------------------------------------------------------------------------x

Plaintiff Damien Vazquez, by his attorneys, The Law Offices of Robert K. Erlanger,

alleges as and for a Complaint against defendants:

## INTRODUCTION

1.  This action arises from defendants' violation of plaintiff's rights preserved under the

United States Constitution, through 42 U.S.C. §1983, and under New York State law.

2.  Through intimidation, torture, confinement, arrest, and criminal processing,

defendants deprived plaintiff of his rights in an attempt to coerce him into falsely confessing that

he had stolen one of defendant Sean Combs a/k/a P. Diddy's ("Combs") Grammy awards, a

crime that he did not commit and for which there was no probable cause that he did commit.

## JURISDICTION and VENUE

3.  This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1337.

4.  Venue arises in this District, under 28 U.S.C. §1391(c), in that defendants' conduct

occurred in this District.

5.  Plaintiff served a Notice of Claim on NYC on April 13, 2004.  More than 30 days

have elapsed since service of the Notice of Claim and adjustment or payment thereof has been

neglected or refused.

6.   A General Municipal Law §50-h hearing was demanded and held.

7.   This action has been commenced within one year and 90 days following the occurrence of the happening of the event upon which plaintiff's claims are based.

## PARTIES

8.   Plaintiff Damien Vazquez is an individual who was once employed by defendant Bad Boy  Entertainment, Inc. ("Bad Boy"), a New York corporation.

9.   Defendant Combs, sued herein individually, is Bad Boy's Chairman and Chief Executive Officer.

10.   New York City ("NYC") is a municipality of the State of New York.

11.   NYC Detective Gloria Frazier ("Frazier"), Shield No. 1887, is an employee of the NYC Police Department.  She is assigned to the Midtown South Precinct ("the Precinct"), and at times alleged herein, was acting within the scope of her employment.

## FACTUAL BACKGROUND

12.   Plaintiff worked for Bad Boy from approximately January 2000 until May 2002.

13.   On or before February 2002, plaintiff was told that he could not work in the Bad Boy main offices, accordingly, a Bad Boy human resources employee gave him a "jiffy" envelope which she told him contained sheets of music industry contacts ("contact sheets") to whom he could send his resume.  Plaintiff did not look at the contact sheets and placed them in the back of his vehicle.  About one month later, his vehicle was totaled in an accident in Pennsylvania while he was following a Bad Boy tour bus back from an event in Detroit.  Plaintiff's uncle, who lives in Pennsylvania, later collected his personal effects from the vehicle, including the jiffy envelope, and put them into a box.  The box was mailed to plaintiff who put it in his parent's garage; he

then forgot about it.

14.   Beginning in January 2003, plaintiff was re-employed by Bad Boy, working through its executive, Shawn Prez. When Prez founded Power Moves, Inc. ("PMI"), plaintiff continued working through Prez although he was to be paid by Bad Boy.  Plaintiff continued to drive a Bad Boy van and worked as part of its street team.

15.   At the end of 2003, plaintiff rediscovered the box that he had stored in his parent's garage after his motor vehicle accident.  He looked at all the contact sheets for the first time and discovered that they contained some of Combs' personal information.  Plaintiff contacted Combs directly by wireless email to arrange for their return.  Combs responded, asking for plaintiff's contact phone number; plaintiff emailed it back to Combs.

16.   Many Bad Boy employees, at all different levels of the company, had Combs's contact phone number and email address.

17.   Three days after the email to Combs, plaintiff was contacted by Bad Boy's head of Human Resources, Vashta Dunlop ("Dunlop"), who asked him to come see her.  After arriving at Dunlop's office, she brought plaintiff  to a room where one of Combs's body guards was present in uniform: black knit cap, leather jacket, and sunglasses. Plaintiff handed the sheets to Dunlop without having been asked to do so and she began to question plaintiff about how he had acquired them.  The 20 minute "interview" ended without conclusion, but Dunlop never accused plaintiff of taking the contact sheets without permission or of stealing them.

18.   Bad Boy never paid plaintiff his wages while he was a Bad Boy employee, despite repeated promises by executives and managers that he would be paid.  Plaintiff finally decided not to return to work after the 2003 Christmas holiday.

19.  In late January 2004, plaintiff heard from Bad Boy sources that Combs was missing one of the two Grammy Awards ("Grammy") that he had won the same year and was spending a good deal of money on investigators trying to find it.

20.  Wanting to help Combs, plaintiff sent him a wireless email relating a conversation that he had had with a co-worker several years earlier, during which the co-worker had confided that he had access to take the Grammy; plaintiff did not initially reveal the co-worker's name. Combs returned the email, stating that he was not good at riddles and asked for the co-worker's name, which plaintiff promptly supplied by return email.  Combs replied by email, "thank you." Plaintiff never asked for anything in return.

21.  Plaintiff was never informed at any time by any Bad Boy employee, or Combs himself, that his any of his communications had caused Combs to feel annoyed or harassed; indeed, Combs's wireless email responses to plaintiff's emails were to the contrary.

22.  On January 29, 2004, a person called plaintiff twice at his home, first leaving a message identifying herself only as a friend of plaintiff's named "Frazier."  At the second call, the person identified himself/herself to plaintiff's mother as "Frazier," a friend of plaintiff's. Notwithstanding that he had no friend named "Frazier," plaintiff took the call.  "Frazier" invited plaintiff to come down the next day to 357 West 35 Street in Manhattan for an interview. Plaintiff told "Frazier" that he was sick and a diabetic, and because of his diabetes, any illness caused his body to shut down.  Because he was unemployed, plaintiff believed that he had been called for a job interview.

23.  The next day, plaintiff drove to 357 West 35 Street with a friend.  Arriving at the address at about 2:30 p.m., plaintiff discovered to his surprise that it was Midtown South

Precinct in Manhattan ("Precinct").  Not having anything to be concerned about, he went inside and asked for "Frazier" as he had been instructed.  His friend remained outside in the vehicle.

24.   After appearing at the Precinct front desk, plaintiff was directed upstairs. Passing through double swinging doors, a woman motioned plaintiff over to her desk.  The first thing Frazier asked plaintiff was, "Are you surprised I'm a woman?"  Then she said I want to speak with you for a couple of minutes, I know that you're still sick and I have to catch a three o'clock train so I want to get you out of here as soon as possible.  Plaintiff again told Frazier that was ill and a diabetic;  Frazier asked him he "takes a needle" and he told her, "yes."

25.   An 8 1/2 x 11 picture of Combs was on the office wall not far from Frazier's desk.

26.   For a minute or two, Frazier began to falsely accuse  plaintiff of making crank calls to a co-worker.   She then moved off that topic to question plaintiff about the contact sheets.

27.   After a few minutes, Frazier asked plaintiff to wait in the hall and asked for his driver's license, which he gave to her.  Plaintiff asked Frazier if he needed a lawyer and Frazier lied, telling him that he did not need one because she would only be a few more minutes.

28.  Frazier brought plaintiff out of the hallway and into a "fax" room where she asked for and received plaintiff's cell phone and "two way." (Several days later, Frazier filled out a "Property Clerk's Invoice," in which she falsely listed the two items as "arrest evidence").  Frazier then again questioned plaintiff about Combs's personal information on the contact sheets.  Plaintiff told her how he was given the contact sheets, what had happened to them, and that as soon as he realized what was on them, he had contacted Combs to arrange for their return.

29.   Throughout her interrogation of plaintiff, Frazier repeatedly called Bad Boy asking for guidance and advice based on the information given her by plaintiff.

5

30.    Frazier next brought plaintiff to a small room with a desk and began to interrogate him about the Grammy.  Frazier asked plaintiff whether he had ever been to Riker's Island and told him that the inmates there were going to just love him and what exactly they were going to do to him.  Frazier demanded that plaintiff confess and tell her where he had hidden Grammy so that they could go and pick it up.

31.    It became apparent that the prior questioning was a transparent pretext for the real reason why Frazier had asked plaintiff to come to 357 West 35 Street -- Frazier was now going to be Combs personal detective to squeeze out of plaintiff the whereabouts of the missing Grammy.

32.    After Frazier's attempts to coerce plaintiff into confessing a crime that he did not commit failed, Frazier imprisoned plaintiff in a holding cell in the larger office.

33.    Frazier never told plaintiff that he was under arrest and never "read" him his Miranda warning.

34.    Plaintiff told Frazier that he needed food because of his diabetes but Frazier told him to drink the Snapple he had brought with him, knowing that this was completely inadequate to give plaintiff the nourishment that he needed.

35.    Plaintiff's mother was alerted by one of plaintiff's friends that something was amiss so she called the Precinct at about 4:30 p.m..  She was directed to Frazier.  His mother asked what the problem was and was told by Frazier that if plaintiff was cooperative, he would be released in a few hours.  She expressed concern that her son was being held in the Precinct without a lawyer but Frazier repeated the lie that she had told plaintiff that he would not need a lawyer because he would be out soon.  Plaintiff's mother also reiterated that her son was an insulin-dependent diabetic and stress would cause his blood sugar level to drop rapidly.

6

36.   Plaintiff fell asleep in the cell because he was ill and weak from the lack of food.

37.   When plaintiff was awakened by Frazier, he was shaking.  Frazier nonetheless brought him into another room where he was interrogated by Frazier and NYC Detectives X, Y & Z, who were dressed in plain clothes.

38.   Having again failed to extract a false confession, Frazier again imprisoned plaintiff in the holding cell where he quickly passed out.  When plaintiff came to, he was on a ventilator in an EMS ambulance and handcuffed to a stretcher.  Plaintiff was admitted to the ER at St. Vincent's Midtown Hospital (St. Clare's Hospital).  After the medical staff called plaintiff's mother to inquire into his insulin dosage, he was given intravenous insulin and otherwise treated. Plaintiff remained at the Hospital for approximately two hours, still handcuffed to the stretcher, even though he was not under arrest.

39.   After he was released from the ER, two police officers brought plaintiff back to Frazier at the Precinct in an unmarked car with his hands handcuffed behind his back.

40.   At the Precinct, plaintiff was again interrogated about the Grammy by the same cabal of four detectives -- Frazier and Detectives X, Y & Z -- and repeatedly threatened with arrest and Riker's Island.  After the interrogation again failed to extract a false confession, plaintiff was again imprisoned in  the office holding cell.

41.  Plaintiff's mother spoke to Frazier again at the Precinct at about 10 p.m.  Frazier told her that they were still holding her son because they had to look into leads but that he would be getting out in a few hours.

42.  Showing that her statement to plaintiff and his mother were manipulative lies, Frazier took plaintiff downstairs to be fingerprinted and photographed, never telling plaintiff that

he was under arrest.  Frazier brought plaintiff back upstairs at around 8:00 a.m.

43.   Frazier left the Precinct with plaintiff and brought him to Bellevue Medical Center to get him intravenous insulin.  Plaintiff's mother had been told that he had been brought to Bellevue; when she arrived there, she saw her son handcuffed to a stretcher.  She heard Frazier tell her son that he should not tell the medical officer at 100 Centre Street, the next destination, that he had any physical ailments as this would only lengthen the arraignment process, even though Frazier understood that such instruction would knowingly or recklessly endanger plaintiff's health.  They remained at Bellevue until about 3:00 p.m.

44.   At 100 Centre Street, Frazier again advised plaintiff not to tell the medical officer that he had asthma or diabetes, and as an inducement, she would return plaintiff's cell phone and two-way the following Tuesday.  This was yet another lie because Frazier never intended to and never did return the cell phone and two-way.  Frazier did not want the arraignment process to inconvenience her day off, because if plaintiff had told the medical officer of his condition, Frazier would have been compelled to wait with plaintiff at a hospital until he was called for arraignment.

45.   Plaintiff was arraigned at about 2:30 a.m. on Sunday, February 1 and released without having to post bail.

46.   Plaintiff was charged by Frazier with aggravated harassment in the second degree, petit larceny, and criminal possession of stolen property in the fifth degree, all Class A misdemeanors, even thought there was no probable cause to support such charges.  None of these charges had anything to do with the missing Grammy.

47.   In concert with Combs and Bad Boy employees, Frazier also had two restraining

orders entered against plaintiff as to Combs, even though there was no support for such orders.

48.   All charges against plaintiff were dismissed on May 5, 2004.

## FIRST CLAIM FOR RELIEF
### (42 USC §1983, False Arrest - Frazier)

49.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 48 as if more fully set forth at length herein.

50.   Plaintiff has a constitutional right not to be subject to an unreasonable seizure or to be deprived of liberty without due process of law, including the right not to be illegally taken into custody or arrested without probable cause.

51.   Star-struck NYC police officers apply the law differently for celebrities.

52.   Without plaintiff's consent and against his will, he was arrested.

53.   Frazier deprived plaintiff of his constitutional rights.

54.   Frazier was acting under the color of law, in that she was performing her official duties as an NYC police officer, including exercising her official powers as a police officer.

55.   By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial.

56.   At all times alleged herein, Frazier further acted recklessly, wilfully, wantonly or maliciously and without good faith toward plaintiff, which conduct entitles plaintiff to punitive damages.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. §1983, Conspiracy to Falsely Arrest - Combs & Bad Boy)

57.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 56 if more fully set forth at length herein.

9

58.   Combs, Bad Boy employees, and Frazier reached an agreement to have plaintiff arrested without probable cause on unrelated charges if he did not falsely confess to taking the Grammy.

59.   Combs, Bad Bad employees, and Frazier engaged in the wrongful, overt acts previously described in furtherance of their conspiracy to deny plaintiff his constitutional rights.

60.   As a consequence of the conspiracy between Combs, Bad Boy employees, and Frazier, plaintiff suffered damages.

61.   At all times alleged herein, Combs and Bad Boy employees further acted recklessly, wilfully, wantonly or maliciously and without good faith toward plaintiff, which conduct entitles plaintiff to punitive damages.

## THIRD CLAIM FOR RELIEF
### (42 USC §1983, Substantial Risk of Serious Harm - Frazier)

62.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 61 as if more fully set forth at length herein.

63.   Plaintiff has a constitutional right not to be deprived of liberty without due process of law, including the right not to be subjected to a substantial risk of serious harm by being tortured to extract a false confession.

64.   Frazier deprived plaintiff of his constitutional rights.

65.   Frazier was acting under the color of law, in that she was performing her official duties as an NYC police officer, including exercising her official powers as a police officer.

66.    By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial.

10

67.   At all times alleged herein, Frazier further acted recklessly, wilfully, wantonly or maliciously and without good faith toward plaintiff, which conduct entitles plaintiff to punitive damages.

## FOURTH CLAIM FOR RELIEF
(42 U.S.C. §1983, Deprivation of Rights - NYC)

68.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 67 as if more fully set forth at length herein.

69.   NYC is a person within the meaning of 42 U.S.C. §1983.

70.   NYC has deliberately provided indifferent training to its police officers as to handling insulin-injection dependent diabetics while they are in police custody.

71.   NYC's indifferent training was the proximate cause of the violation of plaintiff's federal rights.

72.   By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial.

## FIFTH CLAIM FOR RELIEF
(False Arrest as to Combs & Bad Boy)

73.    Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 72 as if more fully set forth at length herein.

74.   Without plaintiff's consent and against his will, Combs and Bad Boy employees arranged for plaintiff to be taken into custody and illegally detained.

75.   Frazier was acting according to Combs and Bad Boy employees' directives and not of her own volition.

76.   There was no probable cause to support the crimes for which plaintiff was charged

11

and he did not commit those crimes.

77.   By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial.

78.   At all times alleged herein, Combs and other Bad Boy employees acted recklessly, wilfully, wantonly or maliciously and without good faith toward plaintiff, which conduct entitles plaintiff to punitive damages as to Combs and Bad Boy.

### SIXTH CLAIM FOR RELIEF
(Outrageous Conduct Causing Severe Emotional Distress - Frazier & NYC)

79.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 78 as if more fully set forth at length herein.

80.   Frazier's conduct toward plaintiff was so outrageous and shocking as to exceed the reasonable bounds of decency as measured by what could be tolerated by an average member of the community.

81.   Frazier's conduct was intentional, or was undertaken knowingly, with substantial certainty that plaintiff would suffer severe emotional distress, or was reckless because it was done in such manner and under such circumstances as to show utter disregard for the consequences that would follow.

82.   Plaintiff's emotional distress of such intensity and duration that no reasonable person could have been expected to endure it.

83.   By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial.

84.   At all times alleged herein, Frazier acted recklessly, wilfully, wantonly or

maliciously, and without good faith toward plaintiff, which conduct entitles plaintiff to punitive damages as to Frazier.

## SEVENTH CLAIM FOR RELIEF
### (Conversion - Frazier & NYC)

85.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 84 as if more fully set forth at length herein.

86.   Because they were not arrest evidence as she claimed, Frazier took plaintiff's cell phone and two way without legal justification.

87.   Frazier or NYC has converted the cell phone and two way to its own use.

88.   As a result of the conversion, plaintiff suffered damages.

## EIGHTH CLAIM FOR RELIEF
### (New York Labor Law §§191,198 - Bad Boy)

89.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 88 as if more fully set forth at length herein.

90.   Between approximately January and December 2003, plaintiff was employed by Bad Boy, as employee and employment are defined under the New York Labor Law.

91.   In violation of Labor Law §191, Bad Boy failed to pay plaintiff his wages.

92.   Bad Boy's failure to pay plaintiff his wages was knowing and willful, entitling plaintiff to liquidated damages under Labor Law §198.

93.   Plaintiff is also entitled to his attorneys' fees and costs under Labor Law §198.

## NINTH CLAIM FOR RELIEF
### (Quantum Meruit - Bad Boy)

94.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 93

13

as if more fully set forth at length herein.

95.   Plaintiff rendered services to Bad Boy under circumstances implying an understanding between him and Bad Boy that he would be paid for those services.

96.   Plaintiff is entitled to the reasonable value of the work that he performed for Bad Boy but for which he was not paid.

WHEREFORE, plaintiff demands judgment against all defendants for damages in compensation for the injuries suffered by him, punitive damages, attorneys' fees and costs, and such other and further relief as may be deemed just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands trial of all issues by jury.

Dated: New York, New York
      June 2, 2004

                          LAW FIRM OF ROBERT K. ERLANGER
                          Attorney for Plaintiff Damien Vazquez

                          By: <u>s/ Robert K. Erlanger</u>
                             Robert K. Erlanger (RE0886)

                          220 Fifth Avenue, Suite 1702
                          New York, New York 10001
                          (212) 696-8045

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
04 CIV 4189 (GEL/DF)
ECF CASE

DAMIEN VAZQUEZ,

Plaintiff,

v.

SEAN COMBS a/k/a P. DIDDY, individually, BAD BOY ENTERTAINMENT, INC., CITY OF
NEW YORK, and GLORIA FRAZIER,

Defendants.

## COMPLAINT and JURY DEMAND

**LAW FIRM OF ROBERT K. ERLANGER**
Attorneys for Plaintiff Damien Vazquez
220 Fifth Avenue, Suite 1702
New York, NY 10001
Tel. (212) 686-8045